Steven F. HOTZE, M.D., Appellant,

v.

Keith E. MILLER, M.D., Appellee.

No. 12–10–00413–CV.

Court of Appeals of Texas, Tyler.

Jan. 11, 2012.

Rehearing Overruled March 19, 2012.

Christina L. McCracken, Scott P. Hazen, Dallas, and Andrew L. Schlafly, for Appellant.

Corey D. McGaha, Richard A. Adams, Texarkana, Grover M. Russell and Andy Tindel, Tyler, for Appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Steven F. Hotze, M.D., appeals from the denial of his summary judgment motions in this defamation case brought against him by Keith E. Miller, M.D. In three issues, Hotze asserts there is no evidence of actual malice or that any objectively verifiable statement published by Hotze about Miller was false, there is no fact question on malice, and the civil conspiracy claim fails as a matter of law. Because there is no evidence of actual malice, we reverse and render.

## BACKGROUND

Miller is a physician and, from 2003 until 2007, he served on the Texas Medical Board (TMB). He was the chairman of the TMB's Disciplinary Process Review Committee. The TMB investigated an individual named Shirley P. Pigott for violations of a TMB rule. After she was found to be in violation of the rule, Pigott con-

tacted members and staff of the TMB complaining about Miller.

Pigott created a website called the Texas Medical Board Watch "to expose and reform the Texas Medical Board." Hotze became aware of Miller's alleged conduct on the TMB and that Miller had testified as an expert against physicians in over forty medical malpractice cases while on the TMB. Hotze wrote one editorial in a community newspaper complaining about the TMB, without mentioning Miller. He wrote additional editorials describing the alleged denial of constitutional rights of physicians who appeared before Miller and the TMB. Hotze invited Pigott to be a guest on his radio program to share her experiences with TMB and to describe her investigation into Miller's dual roles as a TMB member and an expert witness against physicians in medical malpractice cases. Pigott also complained that Miller's position on an advisory board for Blue Cross Blue Shield created a conflict of interest. After Miller resigned from the TMB, Hotze wrote an article saying that Miller was forced off the board. He published the article on his website, Project FANS. The same letter was also published on the website for the Association of American Physicians and Surgeons. Miller sued Pigott and Hotze for libel, slander, libel per se, slander per se, and civil conspiracy. He asked for $1,000,000.00 in actual damages, $3,000,000.00 in general damages, and an award for exemplary damages.

Hotze filed a no evidence motion for summary judgment asserting that there is no evidence that Hotze published any statements that were legally defamatory or false, or that he acted with actual malice. He also asserted there was no evi-

dence of civil conspiracy. Hotze also filed a traditional motion for summary judgment asserting that falsity, actual malice, and civil conspiracy are each conclusively negated by his summary judgment evidence. The trial court denied both motions, and this appeal followed.[1]

### *JURISDICTION*

Unless a statute specifically authorizes an interlocutory appeal, appellate courts have jurisdiction only over final judgments. *Ogletree v. Matthews*, 262 S.W.3d 316, 319 n. 1 (Tex.2007). Generally, the denial of a motion for summary judgment is an interlocutory order not reviewable on appeal. *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999). Section 51.014 of the Texas Civil Practice and Remedies Code contains specific grants of jurisdiction over appeals from certain interlocutory appeals. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (West Supp.2011). Section 51.014(a)(6) confers on members of the electronic and print media, and those whose statements have been published in the media, the right to appeal from a denial of a motion for summary judgment based on a claim or defense arising under the free speech clause of the Fourteenth Amendment. *Id.* § 51.014(a)(6).

Miller disputes the applicability of Section 54.014(a)(6) because he disagrees that Hotze is a media defendant. Miller argues that Hotze is not a "reporter" and he does not disseminate news to the public. Instead, he asserts that Hotze is a "self-promoting physician."

In his petition, Miller complains, in part, of statements made by Hotze and published as editorials in traditional newspapers

---

1. Miller's claims against Pigott have previously been disposed of, and Pigott is not a party to this appeal.

and on internet websites, and statements made in a radio broadcast. The record shows that Hotze has been a political writer and journalist for thirty years. His editorials are published in a weekly newspaper. He hosts two websites that also publish his articles, and he has hosted a radio broadcast. This is sufficient to show that Hotze is a media defendant. *See Klentzman v. Brady,* 312 S.W.3d 886, 891 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (media defendant was a newspaper reporter); *Kaufman v. Islamic Soc'y of Arlington,* 291 S.W.3d 130, 142 (Tex.App.-Fort Worth 2009, pet. denied) (holding that an internet communicator may qualify as a member of the media under certain circumstances). Furthermore, the appeal is also permissible because the statute applies to anyone whose communication appears in electronic or print media when the claims or defenses involved arise under the free speech clause of the First Amendment. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(6); *Kaufman,* 291 S.W.3d at 138. Therefore, we conclude that we have jurisdiction over this appeal.

## DEFAMATION

In his first issue, Hotze contends the trial court erred in denying his no evidence motion for summary judgment because there is no evidence that any objectively verifiable statement published by Hotze about Miller was false and there is no evidence of actual malice. In his second issue, Hotze asserts that the trial court erred in denying his traditional motion for summary judgment because there is no issue of material fact as to actual malice.

### Standard of Review

We apply the same standard of review for the denial of a summary judgment as for the granting of a summary judgment. *Kaufman,* 291 S.W.3d at 143. We review the trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 253 S.W.3d 184, 192 (Tex.2007). After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. TEX.R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged element. *See Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 317 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A no evidence summary judgment is essentially a pretrial directed verdict, which may be supported by evidence. *Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex.2009). An appellate court reviewing a no evidence summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007) (per curiam).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). Review of a summary judgment under either a traditional standard or no evidence standard requires that the evidence presented by both the motion and the re-

sponse be viewed in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310; *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002); *Nixon*, 690 S.W.2d at 548–49. Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). When a party moves for both a no evidence and a traditional summary judgment, we first review the trial court's summary judgment under the no evidence standard of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

### Applicable Law

To maintain a defamation cause of action, the plaintiff must prove that the media defendant (1) published a false statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 636–37 (Tex.2005) (per curiam); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1, 18 (1990). Whether a publication is an actionable statement of fact is a question of law and depends on its verifiability and the context in which it was made. *See Bentley v. Bunton*, 94 S.W.3d 561, 580–83 (Tex.2002).

Two prerequisites must be met for the actual malice standard to apply. First, the plaintiff must be a public official for the purposes of the published statements, and second, the allegedly defamatory statements must relate to the plaintiff's official conduct. *HBO v. Harrison*, 983 S.W.2d 31, 36 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The question of public figure and public official status is one of constitutional law for courts to decide. *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606 (1966); *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998).

### Public Official Status

Miller asserts that he is not a public official. He contends that he could not control investigations and he could not influence the process by which complaints were resolved against physicians. He argues that he had an administrative role and did not have a position of public prominence.

There is no specific test for determining whether an individual is a public official. *HBO*, 983 S.W.2d at 36. Public office is a "right, authority, and duty created and conferred by law which, for a given period ... an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public." *Tarrant Cnty. v. Ashmore*, 635 S.W.2d 417, 420 (Tex.1982). A public officer is one who is authorized by law to independently exercise functions of either an executive, legislative, or judicial character. *Prieto Bail Bonds v. State*, 994 S.W.2d 316, 320 (Tex.App.-El Paso 1999, pet. ref'd). Other factors to consider include a fixed term of office, removal provisions, and qualifications for holding the position, all of which are prescribed by statute. *Guerrero v. Refugio County*, 946

S.W.2d 558, 570 (Tex.App.-Corpus Christi 1997, no writ) (overruled in part on other grounds).

The TMB is an executive body of state government; its members are executive officers of the state. *See* Tex. Occ.Code Ann. § 152.001(a) (West Supp.2011); *Dolenz v. Tex. State Bd. of Med. Exam'rs*, 981 S.W.2d 487, 489 (Tex.App.-Austin 1998, no pet.). Members of the TMB are appointed officers of a major state agency who serve six year terms. Tex. Occ.Code Ann. § 152.005 (West 2004); Tex. Gov't Code Ann. § 572.003(a), (c)(27) (West Supp.2011). The legislature has determined requirements for membership and grounds for removal. Tex. Occ.Code Ann. §§ 152.002, 152.003, 152.006 (West 2004 & Supp.2011). Thus, the legislature has determined that members of the TMB are "state officers." Tex. Gov't Code Ann. §§ 572.002(12), 572.003(c)(27) (West Supp. 2011). Further, the legislature has also recognized that members of state boards are "public officials." Tex. Gov't Code Ann. § 573.001(3)(B) (West 2004).

The TMB's powers and duties are given by the legislature in order for the state to regulate the practice of medicine within its borders. *See* Tex. Occ.Code Ann. § 152.001(a). Significantly, the TMB has discretion to issue a license to practice medicine. *Id.* § 155.002 (West Supp.2011). The TMB investigates and reviews complaints against Texas physicians, and it establishes procedures by which it disposes of complaints, contested cases, and other matters. *Id.* §§ 154.051, 154.056, 164.002–.008 (West 2004 & Supp.2011). The TMB has disciplinary authority and, under certain circumstances, the board may suspend or revoke a physician's license to practice medicine in Texas. *Id.* §§ 164.001, 164.057–.059. Further, the TMB prepares and disseminates information on physicians and the TMB to the public. *Id.* §§ 154.001–.002, 154.004, 154.006 (West 2004 & Supp.2011).

Thus, TMB members are executive officers of the state who have substantial control over governmental regulation of medical practitioners, an issue of public concern. Furthermore, Miller, in his affidavit, explained that when Pigott made ex parte contact with staff and TMB members in an attempt to get her case dismissed, she was attempting "to coerce public officials." TMB members act for the benefit of the public. We conclude that Miller, as a TMB board member, was a public official. *See Ashmore*, 635 S.W.2d at 420; *Dolenz*, 981 S.W.2d at 489.

### Subject of Defamatory State ments

■ Additionally, the allegedly defamatory statements must relate to Miller's official conduct. Miller has identified certain statements that he asserts are unrelated to his role on the TMB. Three of these refer to Miller's having provided expert testimony for the plaintiff in numerous cases during his tenure on the TMB. The statements imply that, for money, Miller will provide information he knows by virtue of his position on the board and that he might use his position on the board to punish physicians who have testified for the defense. Miller also complains of being referred to as the "2006 Red Devil." While that phrase is not defined, we note that it is used in the context of the complaints about Miller's providing expert testimony and possibly taking retribution on defense experts. These comments, as well as the "Red Devil Award," appeared on a single page of the texasmedicalboard-watch.com website. That website page also includes allegations that the professional activities Miller engaged in outside of the TMB created conflicts of interest with his role on the TMB.

Another statement that Miller specifically identifies as one unrelated to his official

conduct accused him of destroying the lives and careers of physicians. This statement clearly refers to his role in determining the fate of a physician about whom a complaint has been filed with the TMB. Additionally, Miller complains generally of an article that appeared in several publications. In that article, Hotze comments on Miller's resignation from the TMB and insinuates Miller misused his position on the TMB. Hotze also mentions Miller's nurse, Bridget Hughes, and her plight involving stolen prescriptions to feed her alleged drug addiction. The article questions Miller's association with Hughes and insinuates that Hughes may know damaging information about Miller. Hotze also states that Miller's resignation from the TMB was in part due to his relationship with Hughes.

We conclude that the complained of statements clearly refer to Miller in his capacity as a TMB board member and relate to his official conduct as such. TMB board members must be physicians licensed in Texas. Tex. Occ.Code Ann. § 152.002. To be a licensed physician in Texas, one must be "of good professional character." *Id.* § 155.003(a)(2) (West Supp.2011). A physician may be subjected to disciplinary action for unprofessional or dishonorable conduct that is likely to deceive or defraud the public. *Id.* §§ 164.051(a)(1), 164.052(a)(5) (West 2004 & Supp.2011). Thus, any conduct by Miller indicating that he is unethical or not "of good professional character," or that is unprofessional or dishonorable and likely to deceive the public reflects on his qualifications to serve on the board. Further, a physician who fails to supervise adequately the activities of those acting under him commits unprofessional or dishonorable conduct likely to deceive or defraud the public. *Id.* § 164.053(a)(8) (West 2004). The comments about Hughes could be construed to fall under this section. We have

reviewed all of the allegedly defamatory statements and found none that did not relate to Miller's official conduct.

### Actual Malice

In his motion for no evidence summary judgment, Hotze asserted there is no evidence of defamation, falsity, actual malice, or civil conspiracy. In his traditional motion for summary judgment, Hotze asserted that falsity, actual malice, and conspiracy are conclusively negated by his summary judgment evidence. Hotze supported his motion with eighteen exhibits. Miller filed a single response to both motions, accompanied by fifty-four exhibits. We will address the element of actual malice as it is dispositive.

■ Because Miller was a public official and the allegedly defamatory statements related to his official conduct, Miller had to prove that Hotze acted with actual malice. *HBO*, 983 S.W.2d at 36. In this context, actual malice refers to the defendant's attitude toward the truth of what he said. *WFAA–TV, Inc.*, 978 S.W.2d at 573. To establish actual malice, a plaintiff must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of whether it was true or not. *Skeen*, 159 S.W.3d at 637. To establish reckless disregard, a public official or public figure must prove that the publisher entertained serious doubts as to the truth of his publication. *Id.*

### Hotze's Summary Judgment Evidence

As summary judgment evidence, Hotze presented a lengthy affidavit that, he asserts, conclusively negates the element of actual malice. In the affidavit, he says he has been advocating for reform of the TMB since 2007. He explained that he first learned about Miller after speaking with Dr. William Rea, who had to appear before the TMB to respond to a complaint

filed against him. Miller allegedly told Rea that he wanted Rea's license revoked. Hotze was "shocked" by this threat and began his investigation into the TMB and Miller's authority to lodge such a threat. He called and interviewed "many dozens" of Texas physicians regarding their experience with the TMB and Miller. Each physician he spoke with who had Miller as an informal settlement conference officer described a similar experience of threats and intimidation. Hotze wrote several editorials describing the experiences of some physicians who appeared before Miller. He described these meetings as "cloaked in secrecy and lacking in due process" and other constitutional rights.

Hotze also explained that he had a conversation with Pigott who told him that Miller had testified as a medical malpractice expert in over forty cases and that Miller had hired a nurse who had previously forged narcotic prescriptions for her own use. Hotze learned that charges were to be filed against the nurse in federal court and questioned why Miller would allow the nurse to continue to work for him. However, Hotze denied creating or approving of any content on the Texas Medical Board Watch website, which he said was created by Pigott, or on Pigott's blog, "Dr. J's House Calls." He denied engaging in a telephone campaign to defame Miller or having a meeting of the minds with Pigott to defame Miller. He denied publishing or adopting any statements made by Pigott.

Hotze stated that he believes all of the allegedly defamatory statements he made about Miller are either true factual statements or opinions that cannot be factually verified. He asserted that all statements he made about Miller consisted of a constitutionally protected exercise of free speech necessary to bring reform to the TMB and concerned significant public issues. He stated that "[t]he TMB's allowance of arbitrary conduct and abuses of authority was personified by Miller as a member of the TMB." Hotze claimed that his editorials about the TMB and Miller led to a legislative hearing regarding the TMB's actions. Hotze stated that he believed his outcry about the TMB, and Miller's conduct during his tenure on the TMB, played an essential role in raising public and legislative awareness of ethical problems associated with Miller's dual role and conflict of interest and of the arbitrary and capricious implementation of TMB rules by TMB board members. After his complaints, he asserted, the legislature prohibited conflicts of interest by board members, ended anonymous complaints, and instituted due process protections for physicians in proceedings before the TMB.

Hotze specifically stated that, at all relevant times, he believed that every oral and written statement he made about Miller was true. At no time did he ever entertain any serious doubts about the truth or veracity of any oral or written statement he made about Miller. He never had any reason to believe that the information he received about Miller and the TMB was false, and he had no reason to doubt its veracity. He specified that the statements he made about Miller related to either the lack of a fair, impartial, and ethical fulfillment of Miller's public office duties as a member of the TMB or the conduct of Miller leading to a conflict of interest while serving on the TMB. He made the statements about Miller with the purpose and effect of reforming the TMB, causing legislative hearings to be held about misconduct at the TMB, and encouraging passage of legislation to prevent the continuation or repetition of unethical conduct at the TMB. Hotze also specifically stated that at no time did he ever believe that any statements he made about Miller were false. Nor did he publish any oral or written

statements about Miller with reckless disregard as to the statement's falsity. He stated that he never purposely published any mistaken fact about Miller. Further, at no time did he publish or intend to publish any statement about Miller that he knew or strongly suspected could present as a whole a false or defamatory impression of events.

### Miller's Response

Miller filed a single response to both of Hotze's motions. He asserted that, although Miller was told that his assumptions and conclusions were incorrect, he refused to believe the facts and purposely avoided or ignored the truth. Miller asserted that Hotze and Pigott ignored the facts about complaints filed with the TMB. Miller contended that Hotze did not verify his claims or research whether there was a rule against serving on the TMB and serving as a Blue Cross Blue Shield advisor. Miller asserts that none of Hotze's claims were based on any facts. Miller presented his affidavit in support of his response. In the affidavit, Miller asserted that Hotze made false statements because Hotze feels his "alternative" form of medicine is under attack. He asserted that the allegations involving Hughes were motivated by a personal vendetta.

As part of his summary judgment evidence, Miller presented portions of Hotze's deposition testimony. Hotze testified that in the latter part of the summer of 2007, he hired an investigator to try to corroborate the testimony of the numerous physicians to whom he had talked about Miller's behavior. He talked to doctors to find out what was going on at the TMB, which is where he got support for saying Miller was arrogant, abusive, and disdainful. Hotze was concerned about what was going on at the TMB. The conflict of interest caused him grave concern. He explained that he based his comments on conversations with physicians, state representatives, senators, and attorneys, and on his experiences with the board. Hotze denied intent to hurt Miller's reputation or harm his medical practice. He explained that the letter to the editor and having Pigott on his radio show were intended to provide a public service about an individual holding public office and the actions he was taking in public office that could adversely affect physicians and patients. He stated that to the best of his knowledge, the statements that Miller was arrogant, abusive, and disdainful were true statements given to him by other physicians. He had no reason not to believe those statements and did not doubt any source. He also stated that he heard no exculpatory statements about Miller's behavior in any informal settlement conference.

### Analysis

 To maintain his defamation cause of action, Miller must prove that Hotze published a false statement, that was defamatory concerning Miller, while acting with actual malice. *See id.* at 636–37. For purposes of our discussion, we assume, without deciding, that the published statements are false and defamatory. This case can be resolved considering Hotze's argument that he is entitled to summary judgment because there is no evidence of actual malice. That is, Hotze asserted there is no evidence that he made the statements with knowledge of their falsity or with reckless disregard of whether they were true or not. The burden then shifted to Miller to raise a fact issue on the element of actual malice. *See Macias,* 988 S.W.2d at 317. Miller's evidence confirms that Hotze based his comments on his conversations with numerous physicians who had appeared before the TMB. Hotze had conducted his own investigation out of concern for how the TMB was being run. He even hired a private investigator to try

to corroborate the information given to him by the physicians. Consistent with an attempt to reform the TMB, Hotze encouraged his readers to contact their legislators about these issues. The evidence does not support a purposeful avoidance theory. *See Skeen,* 159 S.W.3d at 637–38.

■■■ Hotze denied any intent to hurt Miller's reputation and claimed he had heard no exculpatory statements about Miller's behavior in informal settlement conferences. Although Hotze's articles and editorial were written "from a particular point of view," this is not evidence of actual malice. *Id.* at 639. Miller did not show that Hotze made the statements with knowledge that they were false or with reckless disregard of whether they were true or not. *See id.* at 637. Miller brought forth no evidence that Hotze entertained serious doubts as to the truth of the statements at the time they were published. *See id.* The mere fact that a defamation defendant knows that a public official has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations. *Id.* at 639. Further, Miller has not supported his theories that Hotze felt his medical practice was under attack or that Hotze had a personal vendetta against Miller. Miller failed to provide evidence of Hotze's mental state. *See Cloud v. McKinney,* 228 S.W.3d 326, 340–41 (Tex.App.-Austin 2007, no pet.) (op. on reh'g). Accordingly, Miller's summary judgment evidence did not raise a fact issue on the element of actual malice. The trial court erred in denying Hotze's motion for no evidence summary judgment because there is no evidence that Hotze acted with actual malice. *See* Tex.R. Civ. P. 166a(i).

Neither does the record support the trial court's denial of Hotze's traditional motion for summary judgment. In his affidavit, Hotze said he investigated Miller's actions on the TMB and Hotze believed his statements were true and accurate. An affidavit setting forth the absence of actual malice is sufficient to carry the movant's summary judgment burden of proof. *See Freedom Newspapers of Tex. v. Cantu,* 168 S.W.3d 847, 853 (Tex.2005). Hotze's affidavit conclusively negates the element of actual malice as a matter of law because it is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies and capable of being readily controverted. *See* Tex.R. Civ. P. 166a(c); *Cantu,* 168 S.W.3d at 853.

The burden shifted to Miller to offer proof raising a fact issue on actual malice. Again, Miller's evidence did not controvert Hotze's affidavit and failed to raise a fact issue. Hotze's traditional motion for summary judgment, supported by his affidavit, should have been granted because the evidence established as a matter of law that there is no issue of fact regarding the element of actual malice. *See Nixon,* 690 S.W.2d at 548. We sustain Hotze's first and second issues.

### CIVIL CONSPIRACY

■■■ In his third issue, Hotze contends the trial court erred in denying his no evidence motion for summary judgment and his traditional motion for summary judgment because there is no genuine issue of material fact as to Miller's defamation claims. Therefore, he argues, the derivative claim of civil conspiracy fails as a matter of law.

■■■ Civil conspiracy is a derivative action premised on an underlying tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding). That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Id.*

As explained above, summary judgment in favor of Hotze was appropriate on all of Miller's defamation claims. Because none of the actions allegedly conspired upon supports a cause of action, summary judgment was also appropriate against the claim that Hotze conspired to commit those actions. *Trostle v. Combs,* 104 S.W.3d 206, 215 (Tex.App.-Austin 2003, no pet.). We sustain Hotze's third issue.

### CONCLUSION

For purposes of our discussion, we assume without deciding that the complained of statements are false and defamatory. The record supports a determination that Miller is a public official and the complained of statements relate to his official conduct. However, because there is no evidence that Hotze acted with actual malice, and Miller has not raised a fact issue regarding actual malice, we *reverse* the trial court's judgment and *render* judgment that Miller take nothing.