**Reversed, Remanded, and Opinion and Concurring and Dissenting Opinion filed December 18, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00667-CV

---

## MARK RODRIGUEZ, VICTOR TREVINO III, AND THOMAS TREVINO, Appellants

## V.

## RICHARD "RICK" GONZALES, Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2016-87024**

---

## O P I N I O N

While Republican Richard "Rick" Gonzales and Democrat Silvia Trevino were opposing candidates in the general election for the position of Harris County Constable, Precinct 6, Trevino's cousin Mark Rodriguez and her sons Victor Trevino

III and Thomas Trevino (collectively, the Trevino Parties)[1] published negative statements about Gonzales on social media. Gonzales sued them for defamation, and pursuant to the Texas Citizens Participation Act ("the TCPA"), the Trevino Parties moved to dismiss Gonzales's claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015). In this interlocutory appeal, the Trevino Parties challenge the denial of their motion.

We conclude the Trevino Parties established that the TCPA applies to Gonzales's claims, thereby shifting the burden to Gonzales to establish a prima facie case for each essential element of his claims. We further hold that Gonzales is a limited-purpose public figure, and thus, he was required to establish a prima facie case of actual malice for the challenged publications. We conclude that he failed to do so, and in some instances, additionally failed to show that the statement at issue was false. We therefore reverse the judgment and remand the cause for determination by the trial court of the amount of sanctions, court costs, reasonable attorney's fees, and other expenses, if any, to be awarded to each of the Trevino Parties, and for rendition of judgment awarding such amounts and dismissing the case.

## I. BURDEN-SHIFTING UNDER THE TCPA

The TCPA was passed to balance the right to bring a meritorious lawsuit for a demonstrable injury against the need to safeguard the rights to speak freely, to associate freely, and to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. If a plaintiff brings a legal action that relates to, or is in response to, the defendant's exercise of the right of free speech, association, or petition, the TCPA allows the defendant to quickly move for dismissal of the action. *See id.* § 27.003. Filing the

---

[1] Because we will be discussing three individuals with the last name Trevino, we will use their first names when it is necessary to refer to one of them individually.

motion suspends discovery unless the trial court for good cause permits "specified and limited discovery relevant to the motion." *Id.* §§ 27.003(c), 27.006(b).

At the hearing on the motion, the movant has the initial burden to show by a preponderance of the evidence that the action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b).

If this requirement is satisfied, the trial court must dismiss the claim at issue unless the respondent establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). The expression *prima facie case* "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Stated differently, it is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). The movant for dismissal under the TCPA has no burden to disprove the existence of a prima facie case. Indeed, the movant *cannot* do so, because "[p]rima facie proof is not subject to rebuttal, cross-examination, impeachment[,] or even disproof." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (quoting *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993) (second alteration in original)).

If the person who brought the action establishes a prima facie case for each element of the claim, then the burden shifts back to the movant to establish, by a preponderance of the evidence, each essential element of a valid defense. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

Finally, if the trial court grants the motion to dismiss, it must award costs, reasonable attorneys' fees, and other expenses of defending against the action "as

3

justice and equity may require." *Id.* § 27.009(a). The trial court also must sanction the plaintiff in an amount "sufficient to deter the party who brought the legal action from bringing similar actions." *Id.*

Because the trial court denied the Trevino Parties' motion to dismiss in its entirety, the trial court presumably determined, as to each claim, either that (a) the Trevino Parties failed to meet their burden to prove that the TCPA applies, or (b) Gonzales satisfied his burden to establish a prima facie case for each element of the claim and the Trevino Parties failed to prove a valid defense.

The Trevino Parties' first two issues correspond to these burdens. They argue in their first issue that they proved that the TCPA applies, and they contend in their second issue that Gonzales failed to establish a prima facie case for each element of each of his defamation claims. We review the trial court's ruling on the motion to dismiss de novo. *Hearst Newspapers, LLC v. Status Lounge, Inc.*, 541 S.W.3d 881, 887 (Tex. App.—Houston [14th Dist.] 2017, no pet.). If the Trevino Parties prevail in their first two issues, then we will reach their third issue, in which they contend that the trial court erred in failing to award them attorney's fees and sanctions.

## II. THE TREVINO PARTIES' BURDEN

To meet their initial burden to demonstrate that the TCPA applies, the Trevino Parties stated in their motion to dismiss that Gonzales's claims against them were based on, related to, or in response to their exercise of the right of free speech on a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). A "matter of public concern" is defined in the TCPA to include "an issue related to . . . a public official or public figure." *Id*. § 27.001(7)(D). The Trevino Parties argued that Gonzales's candidacy in the contested election for constable made him a public figure. We agree that, for the purpose of this case, Gonzales is a public figure.

4

In the context of defamation claims, there are two types of "public figures." "All-purpose" or "general purpose" public figures are those "who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). In contrast, a "limited-purpose" public figure is a public figure only "for a limited range of issues surrounding a particular public controversy." *Id.*

To determine whether a defamation claimant is a limited-purpose public figure, Texas courts apply the following three-part test:

(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013) (citing *WFAA-TV*, 978 S.W.2d at 571).

Here, all of these requirements are satisfied. The statements at issue all were made within a few weeks of the general election, and the contested election for the position of constable of Harris County Precinct 6 was a public controversy that people were actually discussing at the time of these events. As a candidate, Gonzales had more than a trivial or tangential role in the controversy, and the resolution of the contested race necessarily would have an impact beyond the candidates themselves. Finally, the allegedly defamatory statements concerned Gonzales's fitness for office, and thus, the statements were germane to Gonzales's "participation in the controversy."

Because Gonzales is a public figure for the limited purpose of his candidacy for constable, the Trevino Parties' statements impugning his fitness for that office are statements concerning an issue related to a public figure. As such, the statements were, by definition, statements about a "matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(D). We therefore conclude that the Trevino Parties met their initial burden to establish by a preponderance of the evidence that the TCPA applies to Gonzales's claims, and we sustain the Trevino Parties' first issue.

## III. GONZALES'S BURDEN

Because the Trevino Parties established that the TCPA applies to Gonzales's defamation claims, the burden shifted to Gonzales to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). The elements that a defamation plaintiff must prove are that (a) the defendant published a false statement of fact; (b) the statement defamed the plaintiff; (c) the defendant acted with actual malice, if the plaintiff is a public figure or a public official, or negligently, if the plaintiff is a private individual; and (d) the statement proximately caused damages. *See Anderson v. Durant*, 550 S.W.3d 605, 617–18 (Tex. 2018); *WFAA-TV*, 978 S.W.2d at 571; *Landry's, Inc. v. Animal Legal Def. Fund*, No. 14-17-00207-CV, __S.W.3d__, 2018 WL 5075116, at *4 (Tex. App.—Houston [14th Dist.] Oct. 18, 2018, no pet. h.).

Regarding the first element, a publication is false if it "is not substantially true." *Neely*, 418 S.W.3d at 63. A publication is not substantially true if, taken as a whole, it is more damaging to the plaintiff's reputation than a truthful publication would have been. *See id.* In other words, we determine falsity by first ascertaining the "gist" of the publication. *See id.* at 63–64. A publication's meaning is determined "by construing the publication or broadcast 'as a whole in light of the

6

surrounding circumstances based upon how a person of ordinary intelligence would perceive it.'" *KBMT Operating Co.*, 492 S.W.3d at 721 (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)).

The second element is concerned with whether the publication defamed the plaintiff. The record establishes, and the parties do not dispute, that the publications refer to Gonzales, so this element is satisfied if the publications were defamatory. A publication may be defamatory per se or defamatory *per quod*. A statement that is defamatory per se is one that "is so obviously hurtful to a plaintiff's reputation that the jury may presume general damages." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018) (quoting *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013)). For the purpose of this discussion, we assume, without deciding, that Gonzales produced prima facie evidence that the Trevino Parties' publications were defamatory per se such that general damages are presumed. We therefore do not further analyze the second and fourth elements of Gonzales's defamation claims.

The remaining element concerns fault. As a limited-purpose public figure, Gonzales was required to prove that the Trevino Parties published their statements with actual malice. "Actual malice" in the context of a defamation claim refers not to bad motive or ill will but to the knowledge of, or reckless disregard for, the falsity of the statement. *Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016). "[A]ctual malice cannot be based on a misinterpretation of ambiguous facts that is not unreasonably erroneous." *See Bentley v. Bunton*, 94 S.W.3d 561, 594 (Tex. 2002).

"Reckless disregard" requires more than negligence. *See id.* at 591. It "is a subjective standard focusing on the defendant's conduct and state of mind." *Landry's*, 2018 WL 5075116, at *4 (citing *Bentley*, 94 S.W.3d at 591). "Proof of reckless disregard requires evidence that the defendant had serious doubts about the

truth of the publication, or stated differently, that the defendant had a high degree of awareness of the probable falsity of the statement." *Id*.

## A.     The Relationship Between Defamation Per Se and Actual Malice

Gonzales asserts that if a publication is defamatory per se then the defendant is liable without regard to fault.  Because he contends that each of the Trevino Parties' publications is defamatory per se, he reasons that he is not required to prove actual malice.

As previously explained, whether a statement is defamatory per se affects the need to prove one of the other elements of a defamation claim, but the affected element is that of damages, not actual malice.  *See Tatum*, 554 S.W.3d at 626; *Hancock*, 400 S.W.3d at 63–64.  We overrule this argument as to each publication and each defendant, and we instead determine whether Gonzales established a prima facie case of the elements of falsity and actual malice as to each of his claims.

## B.     Publication by Mark Rodriguez

In response to a post by a person supporting Gonzales's candidacy, Rodriguez posted the following on the social-media site "Nextdoor Eastwood":

> I think the community spoke loud and clear... Sylvia Trevino received. I heard it was 53 or 54 S percent totaling 4700hundred votes.. it sounds like you're bitter for something.. never-the-less good luck to your candid it... nevertheless he's no preacher .. public intoxication *under a theft investigation which is still ongoing.... spouse beating not paying child support*... the good thing he was a cop if not I'm sure the list would go on and on and on.. you don't need a microscope to find that stuff

We have italicized the language that Gonzales contends is a false statement of fact published with actual malice.

8

### 1. *"Under a theft investigation which is still ongoing"*

There is no evidence that the statement that Gonzales was "under a theft investigation which is still ongoing" was false at the time of the publication. If we consider only the evidence favorable to Gonzales from among the exhibits filed in the clerk's record, we have only Gonzales's affidavit testimony,

> I was not at the center of a theft investigation . . . .
>
> Mark Rodriguez stated in a post after the election that I was at the center of a theft investigation, had engaged in 'spouse beating' and had failed to pay child support. I never engaged in 'spouse beating' and I always paid child support for my two daughters, Stephanie Lebron and Terra Gonzales. Furthermore, there is no court filing alleging that I failed to pay child support.

Gonzales does not identify the statement in which Rodriguez allegedly stated that Gonzales was at the "center" of a theft investigation, and although Gonzales denies that he was at the "center" of a theft investigation, he does not deny that he was under an ongoing theft investigation at the time of Rodriguez's publication. Gonzales also does not identify the date of Rodriguez's publication, or whether it was after the primary or the general election. Gonzales's affidavit contains no evidence from which we can infer that, at the time of the statements, Rodriguez had a high degree of awareness that the statement was probably false.

In their appellate briefs, however, the parties have relied on additional documentary evidence that appears in the back of a volume of the reporter's record. At the initial hearing on the motion to dismiss, counsel for Gonzales referred to exhibits A through F, and counsel for the Trevino Parties objected that the trial court was required to rule based on the pleadings and the affidavits, but the trial court ruled

on neither the offer nor the objection.[2] Inasmuch as these documents were discussed at the hearing and both parties rely on them in their briefing, we will assume, as the parties have done, that the documents were properly considered by the trial court and that we may do the same.[3] When we consider this material, four documents make the context of the theft allegation apparent. Three of the four documents are emails with the subject line "lawsuit" sent from Victoriano Trevino to Victor Trevino on January 26, 2017—five weeks after this suit was filed.[4]

The first email contains an apparent screenshot from a mobile phone showing an undated social-media post by Gonzales. In the post, Gonzales states, "Helping Gloria Alvarez Rodriguez deliver hundreds of school backpacks to our future leaders." The post is accompanied by three pictures. One picture shows a pick-up truck with what appear to be boxes in the bed of the vehicle, and the other two are photos of three people in a room with stacks of backpacks.

The second email shows a screenshot of an another undated social-media post by Gonzales. The post includes a photograph of Gonzales leaning against a vehicle with an open hatch-back showing that the back of the vehicle is filled with backpacks. The photograph is accompanied by the text, "People are pulling up and I keep loading their vehicles with backpacks. Just kidding. These are being delivered. I did give some to several who pulled up. After all it's for the kids, right. Where's my help Gloria?"

---

[2] The documents in the reporter's record are not labeled A through F but instead are bates-labeled "DEFENDANTS 000001" through "DEFENDANTS 000021." One page additionally has an exhibit sticker labeled "D," and another page is hand-labeled "exhibit B2."

[3] We do not, however, consider Gonzales's arguments based on documents found nowhere in the record, including his assertion that two of the Trevino Parties requested and reviewed his personnel file from the Houston Police Department before making their respective social-media posts.

[4] Gonzales filed this lawsuit on December 20, 2016.

10

The third document is from the Houston Police Department and is labeled "Administrative Information." Under an illegible heading, the document states, "Major Offenders – Police Impersona/Swindle," and under the heading "Summary," the document states, "MAJOR OFFENDERS DIVISION WAS ASSIGNED BY THE MAJOR OFFICE TO INVESTIGATE A POSSIBLE CASE OF CITY PROPERTY THEFT THAT WAS POSSIBLY MISAPPROPRIATED." The dates September 2, 2016 and October 26, 2016 appear on the document under illegible headings.

The fourth document is another "lawsuit" email containing a screenshot of another undated social-media post by Gonzales. The post states as follows:

> The Trevino camp has failed again in their attempt to derail me. During the time we were distributing free backpacks to the children, the Trevino camp pressured Councilmember Karla Cisneros to file a theft report, without any bases or evidence. They even called Channel 2, Ryan Korsgard to make a story out of their false accusation. Ryan Korsgard called me to ask questions. No wrong doing was found or it would have been a news story. The Trevino's are evil people in my opinion and they will do and say anything to win the election.
>
> The HPD case is closed. HPD knew it was a bogus complaint from the beginning because of the volunteers who gave out the backpacks are outstanding citizens of the community. . . .

In sum, Gonzales acknowledges distributing backpacks and that a third party filed a theft report alleging that the backpacks were stolen. It is undisputed that the alleged theft was investigated. There is no evidence that the investigation was closed when Rodriguez published his statement, no evidence that Rodriguez knew that the investigation was no longer ongoing, and no evidence that Rodriguez was aware that his publication was probably false. As to this statement, Gonzales failed to produce evidence establishing a prima facie case of the elements of falsity and of actual malice.

11

## 2.  *"Spouse beating"*

Concerning Rodriguez's allegation of "spouse beating," Gonzales's only evidence is the statement in his affidavit, "I never engaged in 'spouse beating.'" Although this is evidence of falsity, Gonzales produced no evidence of actual malice.

Gonzales argues that actual malice can be inferred simply because no criminal complaint has been filed against him for domestic violence and because Rodriguez supported an opposing candidate in an election. But a prima facie proof of actual malice requires more evidence than that. Our precedent in *Hoang v. Thinh Dat Nguyen*, No. 14-14-00942-CV, 2016 WL 4533417 (Tex. App.—Houston [14th Dist.] Aug. 30, 2016, no pet.) (mem. op.) illustrates this.

In 2010, Houston City Councilmember Aloysius Hoang told Thinh Dat Nguyen, the editor of a Vietnamese-language publication, that he, Hoang, was considering an invitation to visit Vietnam. *See id.* at *1. Nguyen allegedly threatened to use his newspaper to "destroy" Hoang if he went. *See id.* Two years later, Nguyen welcomed the Vice Minister of Vietnam when he visited Houston. Three protests were organized in front of Nguyen's home and a bomb was placed there. *See id.*

Hoang lost his bid for reelection to the city council in 2013, but he won the Republican primary for a position as a state representative in 2014. *See id.* From 2010 until Hoang sued Nguyen after the primary election in 2014, Nguyen's paper repeatedly labeled Hoang "a Vietnamese Communist, an agent of Vietnamese Communist[s], or a spy of the Vietnamese Communist[s]." *See id.* Nguyen's paper additionally reported that Hoang's father had committed suicide because Hoang was a Communist, though according Hoang, his father was killed in a pedestrian-automobile collision. *See id.* & n.3. Nguyen also stated that Hoang himself had made the bomb placed at Hoang's home in 2012 "to gain attention." *See id.*

12

Hoang received no response when he (a) asked Nguyen for a public debate, (b) asked Nguyen to stop making offensive statements about him, (c) offered to give the paper a public interview, (d) told Nguyen that Hoang was entitled to equal space in the publication to correct the facts, and (e) told the paper's owner to "take appropriate steps." *See id.* at \*3. Although Hoang "swore the false statements were factors leading to his failed re-election bid in 2013 and 'it could be the same for 2014 election,'" we agreed with the trial court that the foregoing was no evidence of actual malice. *See id.*

The facts of this case do not require a different result. Gonzales stated in his response to the motion to dismiss that the Trevino Parties' "personal relationship to Silvia Trevino and the context of their statements constitute circumstantial evidence of their state of mind." Even if we were to agree that Rodriguez had an injurious motive simply because his cousin and Gonzales were opposing candidates for the same office, an injurious motive alone is insufficient to establish a prima facie case of actual malice. *See Bentley*, 94 S.W.3d at 596.

Gonzales additionally states that the Trevino Parties had "no reasonable basis for such statements. . . . The [Trevino Parties] do not articulate any basis for their belief that Gonzales committed these crimes or unlawful acts . . . ." That argument fails for two independent reasons. First, the burden to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question" rested on Gonzales alone. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). And second, the argument is factually incorrect. The Trevino Parties did articulate the bases for their respective statements. Indeed, Gonzales successfully moved for permission to conduct discovery for the express purpose of identifying the sources of the information stated or repeated in the Trevino Parties'

publications, and he relied on those discovery responses at the hearing on the motion to dismiss.

The discovery responses identifying the sources of the Trevino Parties' information included an email containing an apparent screenshot of a mobile phone display showing a part of an undated social-media post by Gonzales and a response by Stella Cevallos-Vinson. The post by Gonzales begins, "This morning I had a great interview with Telemundo reporter Antonio Hernandez." The remainder of his post is cut off. Cevallos-Vinson replied,

> Since you are so adamant on belittling your opponent Silvia R. Trevino and her great husband Mr. Victor Trevino, did you by any chance advice him on this interview of your history of DOMESTIC VIOLENCE RICHARD?????....probably not huh???? Precinct 6 people don't know you like I and your 1st wife know you Richard , and you know damn well what I'm talking about. . . . . . . so STOP trying to fool these people and lie to them that they should vote for you, you know damn well that your not fit to be Constable of precinct 6

[lines possibly were cut off here, and the screenshot continues on another page]

> as hell aren't fit to represent PRECINCT 6. I would be glad to be interviewed by anyone so they will know the true Richard Gonzales .........your pathetic

There is no evidence supporting an inference that Rodriguez knew Cevallos-Vinson falsely alleged that Gonzales committed domestic violence against his first wife, or that Rodriguez had a high degree of awareness that the allegation was probably false. Gonzales points out that, as the Supreme Court of Texas has stated, "inherently improbable assertions and statements made on information that is obviously dubious may show actual malice,"[5] but Cevallos-Vinson's statements are neither, nor does Gonzales contend otherwise. We therefore conclude that Gonzales

---

[5] *Bentley*, 94 S.W.3d at 596.

14

failed to produce evidence establishing a prima facie case of actual malice regarding this statement.

### 3. *"Not paying child support"*

Our analysis regarding Rodriguez's statement about Gonzales "not paying child support" is nearly identical to our analysis concerning his statement about "spouse beating." Here, too, Gonzales produced evidence of falsity, but no evidence of actual malice.

Gonzales asserts that Rodriguez had no external sources for this statement, but he cites no evidence in support of this contention. He then makes the contrary assertion that Rodriguez published his statement concerning child support after seeing Cevallos-Vinson's post in which she said of Gonzales, "I know he was way behind on child support when I dated him." Cevallos-Vinson's statement is neither inherently improbable nor obviously dubious. Thus, Gonzales failed to establish a prima facie case of actual malice for any part of Rodriguez's publication.

We accordingly reverse the portion of the trial court's ruling denying the motion to dismiss as to Rodriguez.

## C. Publication by Victor Trevino III

Victor posted the following on social media, apparently in response to a post by another user:[6]

> Mr. O'Sullivan, . . . [A]nytime you attempt to say something negative about my parents, I will continue to remind Nextdoor readers of the FACTS about your Republican candidate.
>
> FACTS such as your Republican candidate is the ONLY candidate that has a CONVICTION of a Criminal Offense on his record. FACTS such

---

[6] Due to the publication's length, we have abridged the first paragraph and omitted the fourth and fifth paragraphs.

as he was ARRESTED, CHARGED, and CONVICTED of Public Intoxication. FACTS such as your Republican candidate is the only candidate with two separate incidents which he was Reprimanded and Disciplined while with HPD for Official Misconduct. *FACTS such as your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for Domestic Violence.* Which now even more women are coming forward to verify on Facebook. *And of course the FACT that your Republican candidate is currently at the center of a Criminal Investigation by HPD for storing and distributing stolen merchandise. A crime in which even your Republican candidate has acknowledged he has been questioned for regarding him admitting on his Facebook that he stored and distributed stolen merchandise.*

Regarding proof you asked for recently on another post, your Republican candidate has made countless baseless allegations against my parents, all of which they have emphatically denied, which you and your Republican candidate have never provided any proof but I don't have to show proof when your Republican candidate hasn't even denied the validity of any of my comments or allegations I have made against him because he knows they are TRUE, and more importantly he knows I have the documentation to prove it if he ever thought about denying them.

Again, we have italicized the language that Gonzales contends are false statements of fact published with actual malice.

### 1. *"Previous girlfriend/ex wife filed on him . . . for Domestic Violence"*

Gonzales attested that he never engaged in "spouse beating" and that no complaint has ever been filed against him for domestic violence. Most of his arguments regarding this statement focus on the absence of a filed complaint. The "gist" of the publication, however, is that Gonzales is unfit to be constable because he has been convicted of one criminal offense, disciplined for official misconduct, and accused of, or investigated for, additional offenses. Regarding domestic violence, the implicit accusation is that Gonzales committed the crime of domestic violence—a statement that is defamatory per se, regardless of whether anyone filed

16

a criminal complaint.  Gonzales denies that he ever dated Cevallos-Vinson, but he does not deny that he committed domestic violence against a girlfriend; thus, even if no complaint was filed, Gonzales has failed to show that the statement is not substantially true.  He therefore failed to meet his burden to establish by clear and specific evidence a prima facie case for the element of falsity.

In addition, Gonzales failed to establish a prima facie case of actual malice. Gonzales relied in part on Victor's declaration, "I based my November 2, 2016 post on Nextdoor Eastwood on information received from other residents of East End, Houston, Texas, as well as Facebook posts by Stella Cevallos-Vinson and Plaintiff Richard Gonzales, which I believed to be true."  At the hearing on the motion to dismiss, Gonzales relied on the Trevino Parties' discovery responses documenting some of these sources.  The discovery responses included the previously discussed post by Stella Cevallos-Vinson accusing Gonzales of domestic violence, as well as the following string of Facebook posts:

> **Joe Joey**
>
> ***BREAKING NEWS***
>
> Republican Candidate Richard Gonzales has been ARRESTED, CHARGED, and CONVICTED of Public Intoxication.
>
> Now it finally makes since why Republican Candidate Richard Gonzales is always trying so hard to deflect any and all attention away from him and onto his opponent.  It turns out Republican Candidate Richard Gonzales is the ONLY actual candidate for Precinct 6 Constable that has ever been ARRESTED CHARGED, and CONVICTED of a Criminal Offense
>
> *Now the reported allegations of Drunken Domestic Violence are starting to make a lot more sense. . . .*
>
> > **Juan Munoz** WOW!!!!  This was news....in 1978!! C mon man, dig up some stuff that happened in this century!  It looks like

desperation to me.  I'm sure someone can dig up something on you when you were a teenager.

. . . .

**Joe Joey**  Stella Cevallos-vinson explain to Mr. Juan Munoz what kind of Hell Rick Gonzeles put you through.  Since I appear desperate

**Juan Munoz**  I don't know the lady.  I don't know her story.  If something actually happened (I'm not saying it didn't I wasn't there), there were legal avenues she could have pursued.  There are always 2 sides to every story.

**John Guajardo II**  Domestic violence is domestic violence regardless especially in the great state of Texas.

**Juan Munoz**  Being stupid is being stupid in any state.

**John Guajardo II**  Exactly.  Too bad people like Rick don't understand that concept

**Joe Joey**  Totally see your point Mr. Juan Munoz . . . .  These are real claims from someone who once had a relationship with Rick.  I am requesting an open records act to show proof that this occurred.

. . . .

**Stella Cevallos-vinson**  He was not a teenager, and being abusive to a woman, being physically and or verbally is not ok.  It's obvious that regardless you Juan Munoz are for that piece of [expletive]

**Juan Munoz**  Stella Cevallos-vinson did you report this to the police?  Regardless of who I'm for, wrong is wrong.  But to come out now and bring it up, I hope you understand how it looks suspicious

**Stella Cevallos-vinson**  Of course it might look suspicious but I'm not one to make false claims or accusations on anyone.  And no it wasn't reported to police ... stupidity on my part and *I was still dating him.*  I know the truth and so does he.

. . . .

**Juan Guajardo II** . . . .  Never have we had a candidate as dangerous as Rick Gonzales run for office. . . .

18

. . . .

> **Stella Cevallos-vinson**   Well we just won't worry about him because he will NOT be elected.... Thank God.... and when you say dangerous, *by all means is he ever dangerous*[7]

There is no evidence that Victor actually knew that such statements explicitly or implicitly accusing Gonzales of domestic violence were false, and the statements themselves are neither inherently improbable nor obviously dubious.

### 2.   *"Currently at the center of a Criminal Investigation"*

Our analysis of this statement by Victor mirrors our analysis of Rodriguez's statement that Gonzales was "under a theft investigation that is still ongoing." Gonzales attested, "I was not at the *center* of a theft investigation,"[8] but he admits both that City Councilmember Karla Cisneros filed a theft report claiming that the backpacks he distributed were stolen and that the Houston Police Department investigated the complaint. Because Gonzales produced no evidence that the investigation concluded before Victor posted this statement on November 2, 2016, Gonzales failed to show that Victor's statement is not substantially true. Stated differently, Gonzales failed to produce clear and specific evidence establishing a prima facie case of the element of falsity.

Gonzales also produced no evidence of actual malice. There is no evidence that when Victor posted this statement, he knew that the investigation had concluded that he seriously doubted that the investigation was ongoing.

---

[7] Emphasis added.

[8] Emphasis added.

### 3. *"Acknowledged he has been questioned [about] admitting on his Facebook that he stored and distributed stolen merchandise"*

Regarding this statement, Gonzales attested that he has never admitted to storing and distributing stolen merchandise. His affidavit testimony is clear and specific evidence establishing a prima facie case of the element of falsity.

The element of actual malice is more problematic. It is true that Gonzales posted pictures of a room containing stacks of backpacks and posted photos and texts admitting that he was distributing the backpacks. Gonzales also admitted in another post that a member of the Houston City Council had filed a police report claiming that the backpacks were stolen. Gonzales stated in the latter post that the complaint was baseless and was filed at the instigation of the "Trevino camp," but "[t]he mere fact that a defamation defendant knows that a public official has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations." *Hoang*, 2016 WL 4533417, at *3 (quoting *Hotze v. Miller*, 361 S.W.3d 707, 718 (Tex. App.—Tyler 2012, pet. denied)). It nevertheless remains true that Gonzales did admit on Facebook that he distributed the backpacks; he did admit that Karla Cisneros filed a police report claiming that the backpacks were stolen; and he did admit that a reporter questioned him about these events. Given the absence of evidence that Victor knew Cisneros's theft allegations were false or had a high degree of awareness that the allegations were probably false, it cannot be said that Gonzales established a prima facie case of the element of actual malice.

We reverse the portion of the trial court's ruling denying the motion to dismiss as to Victor.

### D. Thomas Trevino

In Thomas Trevino's social-media post, he wrote as follows:

20

The republican Rick Gonzalez likes to point out everyones criminal records. Heres one for you Rick, why dont u put ur criminal past agains my moms criminal past. My mom has no criminal past/ Record. In my opinion your violation of non payment of child support is worse than any felony. What a disgrace.-T #VoteSilviaTrevino

Although it is undisputed that Gonzales has a criminal record for public intoxication, Gonzales contends that by juxtaposing an allusion to his criminal record with the statement opining that non-payment of child support is worse than any felony," Thomas implied that Gonzales has a criminal conviction for intentionally or knowingly failing to pay child support. *See* TEX. PENAL CODE ANN. § 25.05 (West 2011). In any event, we assume, without deciding, that the statement is defamatory per se.

Gonzales and his daughter Stephanie Lebron each attested that Gonzales "always paid child support"; thus, Gonzales produced clear and specific evidence establishing a prima facie case for the element of falsity.

The same cannot be said about the element of actual malice. There is no evidence that Thomas knew the statement was false or made the statement with a high degree of awareness of its probable falsity.

As evidence of actual malice, Gonzales relied on Thomas's declaration, which was attached to the Trevino Parties' reply to Gonzales's response to the motion to dismiss. In his declaration, Thomas stated, "I based my November 1, 2016 post on Facebook on information received from Plaintiff Richard Gonzales's daughter, Stephanie Gonzales Lebron, which I believed to be true." Gonzales also relied on Lebron's affidavit, in which she stated that she went to high school with Thomas and occasionally sees him at social events, but she has never told Thomas or anyone else that Gonzales failed to pay child support. Such evidence, however, does not rise to

21

the level of actual malice. *See Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 283 (Tex. App.—Houston [14th Dist.] 1996, no writ) (where reporter spoke with multiple police officers to verify the incident reported, one could reasonably infer that the reporter was mistaken or negligent but could not reasonably infer that the reporter willfully published false information). Because Thomas does not identify the "information received" from Lebron, we do not know whether he claims that Lebron affirmatively stated that Gonzales failed to pay child support when due or whether Thomas erroneously inferred this from something else that Lebron said.

We reverse the portion of the trial court's ruling denying the motion to dismiss as to Thomas. Having reversed the ruling as to each of the Trevino Parties, we sustain their second issue.

### IV. DISMISSAL AWARDS

Having sustained each of the Trevino Parties' first two issues, we now reach their final issue, in which they argue that the trial court erred in failing to award them attorney's fees and sanctions as required under the TCPA. If a claim is dismissed under the TCPA, the trial court is statutorily required to award to the movant "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require," as well as "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). Because the trial court erred in denying the motion to dismiss as to each of the Trevino Parties, the trial court also erred in failing to make dismissal awards to each of the Trevino Parties as required by section 27.009. We accordingly sustain the Trevino Parties' third issue.

22

## V. CONCLUSION

The Trevino Parties met their burden to show that the TCPA applies to Gonzales, and as a limited-purpose public figure, Gonzales bore the burden to produce clear and specific evidence establishing a prima facie case for each element of his defamation claims, including the elements of falsity and actual malice. Because he failed to satisfy that burden, we reverse the trial court's denial of the Trevino Parties' motion to dismiss, and we remand the cause for the trial court (a) to determine the amount of attorney's fees, court costs, and sanctions to award to each of the Trevino Parties, (b) to determine the extent to which justice and equity require an award to any of the Trevino Parties of "other expenses incurred in defending against the legal action," and (c) to render a judgment making such awards and dismissing the action. *See id.*


/s/     Tracy Christopher
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison (Frost, C.J., concurring and dissenting).